May it please the Court, Andrew Goetz for the United States. With the Court's permission, I'd like to reserve three minutes for rebuttal. Compassionate release is a narrow gateway. It is not a resentencing statute. It is not a loophole around 28 U.S.C. 2255. And it does not permit a district court to relabel ordinary circumstances as extraordinary and compelling ones. In granting defendant Ronald Hunter's motion for compassionate release from his murder sentence for premeditated murder, the district court violated those court principles. That decision should therefore be reversed. I'm going to start with the district court's erroneous reliance on Booker, both because I think it's the clearest example of legal error, and because the district court stated in his decision, and I'm referring to page 2513, that the other bases for release here piggybacked on Booker. That age and disparity with co-defendants could have been brought as Booker arguments. So if Booker was a legally impermissible ground for compassionate release, the rest of the House of Cards falls. And Booker was a legally impermissible ground for, I think, two reasons, one narrow and one broader. The first reason is what this court held in Tomes and Wills and Jarvis, the same reasoning the court applied there, which is that the ordinary application of a non-retroactivity rule is not an extraordinary and compelling basis for release as a matter of law. Ordinary cannot be extraordinary. And here, the reason the defendant could not take advantage of Booker was because of the ordinary rules that apply to court-driven changes in the law, and that apply to Booker here. Booker applied to any defendant going forward or whose sentence was not yet final on direct appeal. For any defendant in Hunter's shoes whose sentence was already final, that defendant was not allowed to take advantage of Booker because of the ordinary rules that apply in 2255. That is the reasoning this court applied in Tomes and Wills and Jarvis, and it applies equally here to Booker. The second reason, the broader reason, I think requires us to step back for a minute and look at the broader statutory context. When a defendant's sentence has become final and he wishes to challenge it after its final on direct appeal, every constitutional claim must be brought through 28 U.S.C. 2255, regardless of how it's styled. If a defendant files a motion to apply Booker, if he calls it a 60B motion, if he calls it a writ of quorum novis, whatever the defendant calls it, if it is a constitutional challenge to his sentence, it must go through the procedural steps of 28 U.S.C. 2255. That's to avoid allowing defendants to have a loophole around those requirements through, quote-unquote, inventive captioning. Here, however, we have a constitutional argument. Booker is, at its essence, a constitutional challenge to Mr. Hunter's sentence. He is saying that my sentence was imposed in violation of the Sixth Amendment, and other defendants who were sentenced after Booker, their sentences were not. It is a constitutional challenge to his sentence. It should have been required to go through 28 U.S.C. 2255. And that includes things like non-retroactivity principles, procedural default, certificate of appealability rules, the statute of limitations, the bar on second or successive petitions in 2255H. In allowing the defendant here to raise a Booker claim via compassionate release, the district court gave him what's essentially the loophole of all loopholes, where he got to avoid all of those ordinary restrictions just by calling his Booker argument extraordinary and compelling. I mean, if that works here, it works for every defendant in his shoes, and every defendant who wishes to raise a legal argument that is barred in some way by 2255. So that's the broader reason here, is that the district court's decision gives him what's, quote-unquote, an end run around those ordinary restrictions that apply in every case. Now, because age and disparity piggybacked on the Booker holding in the way they did, I think the court could end its analysis there. If, however, the court chooses to address the other issues, those were not extraordinary and compelling either, either in isolation or in combination. And age and disparity, if the court addresses those, really follow the same track, and it's sort of a three-part track here. The first part of that track is more fact-specific. It's a narrower part, that these reasons were not extraordinary under any meaning of the word. A defendant who is nearing his mid-20s when he commits a murder is not extraordinary based on the age when he committed the murder. That's an ordinary age. It's in the middle of the bell curve. And this wasn't some quick change of mind or peer pressure or something along those lines. This defendant was a paid hitman. This was calculated. This wasn't an impulse decision or the type of decision that is usually affected by a defendant's age, where a defendant's age might matter. This was a cold, calculated decision where they hunted this woman down, found her outside of a nightclub, shot her in the head, and kept shooting into her lifeless body. These are all facts or factors that were known at the time of sentencing. Should we apply the Compassionate Release Statute only to post-sentencing factors in conduct and not relitigate facts that were known at the time of sentencing? Yes, Your Honor. Okay. That might be an easier way to look at it, isn't it? I mean, all this stuff about his age and I don't know what else. But, I mean, that was known. The Compassionate Release Statute is not a resentencing statute. To my understanding, it focuses on post-sentencing factors. Do you agree with that, and would you want us to so hold in this case? Yes, Your Honor. I would agree with that. I think that's actually the more straightforward way to look at it. I like straightforward. It's also the way that, you know, I think that the Court's crafting a legal rule for how this is going to apply in other cases. That's the rule that makes sense. We see Judge Lightman basically resentencing him here, and I don't think that's what Congress intended under the Compassionate Release Statute. Isn't the point that Judge Griffin just asked you about, isn't that the much more straightforward and obvious analytical construct for this case, as opposed to this thing you just told us about 2255s and how you can't do an end run about arguments that should have been made in a 2255? I mean, it just seems to me the more obvious approach. Well, I think I agree with you 90% of the way, Judge Griffin. Okay. What's the 10%? I'd say the 10% is when we're talking about changed circumstances, they should be changed factual circumstances, and what I'm referring to with the end run around 2255 in the Court's decision in Tomes and Jarvis and Wills is that changed legal circumstances can't count. So what we're talking about is changed factual circumstances. So I think that's the caveat that I would add. But as far as the other 90%, I think that's absolutely true, and if you look at the defense's legislative history even that they cite, that refers to changed circumstances. That doesn't say resentence anew every time a new judge gets the case. Okay. Looking at facts and factors that occurred after sentencing, one thing Judge Lightman relied upon was his conduct in prison, and he thought it was exemplary, I guess, but how many disciplinary charges has he received in prison? A lot. You don't know the number? I don't know the cold number. Lightman thought it was exemplary, but I've got that he was charged with fighting, possessing of a weapon in prison, all sorts of serious things. And do you consider that his record in, or how do you characterize his record in prison? As typical, bad, great record? Would it justify a compassionate release, his record in prison? No, Your Honor. I think it's no for two reasons, legal and factual, and I'll just start with the factual because Your Honor raised that. I mean, it's not just one instance. I think there were three for fighting. There was one for having a lock in a sock, which is apparently a weapon in prison, two for having a shank in prison. I mean, this is a long series of disciplinary violations. No, it's incredible. I can't believe that Judge Lightman thought this was exemplary. I mean, I read his charges and I said, what, is he reading the same record I'm reading? It just doesn't make a lot of sense. No, it doesn't. The whole decision here doesn't make any sense in my view. Well, that's our position as well, Your Honor. Okay. So I guess I'm asking, how do you want us to craft the opinion? So I think on rehabilitation alone, or is Your Honor asking more generally? Just more generally. I mean, we're going to be setting precedent on this case because there's not very little law on this, so we're going to be establishing the law. Tell me what your wish would be, I guess. So I think the best way to craft the opinion is in four parts. The first part is, the first two parts deal with the change in the law. One, under Tomes, Wills, and Jarvis, a non-retroactive change in law is not extraordinary, it is ordinary. Two is that a defendant cannot use compassionate release as an end run around 2255. And that helps you just in terms of down the road. I mean, it helps you if this opinion says something to that effect rather than just being a general, you can't re-sentence and call it extraordinary and compelling. I don't think it just helps. I mean, yes, but it doesn't just help us because of the court. Well, it gives guidance to counsel for defendants as well, but that would be something you would advocate needed to be in the opinion, and frankly, I hadn't thought about that. I think it does need to be in the opinion because we are seeing this Booker-type argument and other arguments that should have been raised on 2255 increasingly being used by defendants, both pro se and represented, and a few outlier district judges. And so this is going to keep coming up, and this case squarely presents that issue. Getting back to the how would I write the opinion, I think the third point more generally is that compassion release is about changed circumstances. It's not a re-sentencing provision. And then the fourth point I think gets to rehabilitation, which is rehabilitation is a changed circumstance, but one, rehabilitation alone cannot qualify as an extraordinary and compelling reason. We know that from 28 U.S.C. 994T, and two, here there's no basis in the record to conclude that this is extraordinary and compelling rehabilitation. There was another thing that the judge relied upon that might be worthy of mention as you flip off these things, and that was sentence disparity because that exists in so many cases, and it totally overlooks the fact that universally people who plead and cooperate with the government get to do sentences. And that seemed to be discommon, and the disparity was looked at kind of in the abstract. Yes, I think that's right, Judge Guy, and I think that's erroneous for two reasons. One is that's something known to the judge at the time of sentencing, and the judge knows it because this defendant is not getting a substantial assistance reduction, not getting a credit for acceptance of responsibility,  all those things that the judge knew at sentencing. Well, this defendant, Hunter, is the one that actually pulled the trigger and killed this woman by shooting her in the head outside the bar and then shot her four more times. I mean, I guess there's some co-defendants, but, I mean, Hunter is the guy that actually pulled the trigger, right? That's correct, Your Honor. I mean, so I would expect that his sentence would be more severe than his co-defendants. I mean, there would be a factual error in Judge Lightman's having said that the disparity in this particular case was unwarranted, right? Yes, I think so. I guess you'd characterize that as a factual error, although perhaps not necessarily. I mean, it seems both factual and legal here. I mean, not appreciating just how culpable it is to be the one who comes up to somebody and shoots them in the head There's other evidence, isn't there, that he's committed other murders too? Yes, Your Honor. He's a hit man. And Lightman thought, well, it's fine, he's a young man, he's made some mistakes. I mean, you're looking at the worst kind of offender here. It is odd that the judge viewed a serial killer as having committed youthful indiscretions, Your Honor. Very odd. Unless the Court has any further questions, my red light's been on for a while, I apologize. I would ask that the District Court's decision be reversed. Okay. Thank you. All right. Ms. Mazur, is that how I'm pronouncing it correctly? It's Mazur, Your Honor. Mazur, sorry. You may proceed. Good morning, and may it please the Court. The District Court made a highly factual and individualized determination that four factors in Mr. Hunter's case, when considered in combination, warranted a sentence reduction. This was not an abuse of discretion, because Section 3582C requires courts to decide whether extraordinary and compelling reasons exist. Now, the government dissects the District Court's opinion, claiming that each factor identified is simply ordinary. But it fails to appreciate that something ordinary on its own can be extraordinary when combined with other things. In my brief, I used a choir analogy, and if I may offer another, someone can combine a bunch of ordinary and generic ingredients, let's say flour, baking powder, sugar, butter, milk, and eggs, and bake an extraordinary cake. Mr. Hunter is not asking the District Court to deem any single factor extraordinary and compelling. Rather, he's simply asking this Court to adhere to the statutory text and affirm the District Court's conclusion that the unique combination of circumstances in this case amounted to extraordinary and compelling reasons. Counsel, the problem for me with your cake analogy is that it's true that you phrased it, but if you turn it around to the facts in this case, if you use four of the wrong ingredients, you don't get a cake at the end. And essentially, every one of the points that the District Court relied on are suspect in this case. So the whole isn't greater than the sum of its parts in this case, it doesn't seem to be. Well, Your Honor, I believe that, as with all cases of statutory interpretation, we should start with the text. And that text provides that the Court may reduce a term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction. But, you know, because the standard is abuse of discretion and because the statutory standard is pretty vague, it's up to the appellate courts to try to draw some lines as to what is permissible in the exercise of discretion. And it's not unreasonable to think that an appellate court would think that some of the factors in this case are not appropriately considered. Yes. The District Courts typically, with sentencing, are afforded broad discretion. This isn't a sentencing, is it? No, Your Honor, it is not. The problem is that Judge Lightman essentially tried to re-sentence the defendant. He treated it as a re-sentencing, and I think that's the main error here. I actually don't believe so. I think Section 3582C, the idea is to focus on the present and evaluate not only the facts as they exist today, but also in Logan, one of the cases that the government cites, talks about things that either the District Court didn't consider or could not have considered at the time. And in this case, because the guidelines were mandatory at the time that Mr. Hunter was sentenced, there are a whole host of considerations that the District Court was categorically precluded from considering. So while the court may have been aware of Mr. Hunter's youth and may have been aware, as Judge Guy mentioned, of the co-defendant disparities, Judge Taylor could not consider those things and did not consider those things. If you look at the sentencing transcript, it spans four or five pages. There's no analysis of the 3553A factors, and that's offensive to modern-day sentencing sensibilities. I don't, but this is not a review of the sentence, is it? No, it's a sentence modification. There's some of us, modern-day sensibilities. I sentenced when there were no guidelines. I sentenced when there were mandatory guidelines. The guidelines became advisory after I was already an appellate judge, but I'm not sure of all those systems. The mandatory guidelines were not the best ones. Fair point, Your Honor. But I think, well, again, I think we have to go back to the statutory text, and you had mentioned that it's important for appellate courts to set limits, but the statutory text simply does not include the limitations that the government urges this court to engraft onto the sentence modification statute. Courts take statutes as they find them, and they interpret the words as written. Well, we're not going to allow district courts through the Sixth Circuit to interpret the statute in different ways, are we? No, but in the same way that Booker affords discretion to district judges. I know, but questions of law have to be decided uniformly. We can't have a district court in Detroit saying the law means this, and a district court in Cincinnati says the law means something else, and say, well, there's no abuse of discretion. They've interpreted the law differently. Well, no, that's not what abuse of discretion. We correct for mistakes of law, and interpreting a statute incorrectly is an abuse of discretion. I agree. I mean, you agree that the law must be uniform? Of course, Your Honor. So what extraordinary and compelling means in each district court has to be the same standard, legal standard, right? That is correct, Your Honor. Judge Lightman here did define extraordinary and compelling and went through the factors and explained why each factor that he identified satisfied those dictionary definitions. Well, at the very minimum, this is not a statute that is intended to permit re-sentencing. It's a statute that lets the judge change a sentence because something extraordinary and compelling has arisen post the original sentence. That would just seem to be a very minimal rule that applies here. I mean, that's all the legislative history points to that. Right. Yes, and the legislative history is obviously important, but again, we look at that. And it's compassionate release. The title is in itself instructive because that also carries the implication that some circumstance has arisen since the original sentence that would permit a judge in the exercise of his or her discretion to release the individual. Don't you think that the very nature of the statute itself has to be taken into account? Respectfully, Your Honor, the statute that Congress named is called the sentence modification. Compassionate release is colloquial, and that's why I keep coming back to it. Well, I don't know if the language that the legislators used in discussing it may not have been compassionate release, but compassionate release is an apt label for what they were talking about, isn't it? Critical illness, those sorts of things. Yes, and critical illness is certainly mentioned in the legislative history, but so, too, is changed circumstances. And you do have changed circumstances here. One of the big ones, of course, being Booker. Justice Stevens, I believe, in his partial dissent, described Booker's remedy as extraordinary five times. And so to say that Booker is not a changed circumstance and that it's not extraordinary and not compelling, when Mr. Hunter, his sentence was driven by the guidelines alone, Congress mandated for the two offenses a mandatory minimum of 25 years. But because Booker was mandatory, any discretion was taken. I guess the sentence at the statutory minimum was taken away from the judge. And I think that that is significant. But moreover, unlike Mr. Hunter, not everyone sentenced under the mandatory guidelines was a youthful offender, which is a term that this United States Sentencing Commission uses, and started using drugs and alcohol at the ages of 13 and 16, respectively. Not everyone sentenced under Booker had more culpable co-defendants who were responsible for... In what way were they more culpable? Well, Your Honor... It's a little hard to be more culpable than being the gunman who shot and killed the victim. I am not disputing the seriousness of the offense here. But I think if you look at statistics... In what way were they more culpable than he was? Mr. Patent ordered the deaths of the killings of 10 people, including Ms. Johnson, who was the victim in this case. Mr. Powell, David... Were those a part of the charge in this case? Yes. The other killings were part of the indictment. Sorry, I should have explained this better. Mr. Patent and Mr. Crawford are the heads of a very large drug-trafficking organization in Detroit that's distributing crack cocaine not only in the city, but throughout various states. Mr. Crawford begins cooperating, I believe, in late 91 and gets Patent involved. Patent is arrested, pleads guilty in 1995, 4 or 5, I believe, years before Mr. Hunter is indicted. Mr. Patent ordered the deaths or the killings of 10 individuals, including the three that Mr. Powell was convicted of shooting and killing, as well as Mr. Culp, who was also convicted of three murders. Patent also ordered the killing of Monica Johnson, who Mr. Hunter killed. So in terms of... I don't know if you can... He was convicted of killing one, Your Honor, and the jury acquitted him of all of the other murders. Oh, okay. They are referenced in the PSR to get to a question that you asked the government, but the sentencing judge never found, by preponderance of the evidence, that Mr. Hunter committed those murders, and that is the standard for something to be used at sentencing, and I don't think that that can be disregarded by this court. As such, I think that labeling him as a hitman or a serial killer just isn't supported by the record. But moreover, with respect to the co-defendant disparities, PSRs, and I'm sure you are familiar, list co-defendant sentences for a reason. It's because district courts care, because whether you call it disparities, whether you call it just punishment, whether you talk about promoting respect for the law, when people get really lopsided sentences, like Mr. Patton, who was released in 2004 despite ordering the deaths of ten people, Mr. Powell, who was released in 2013, or eight years ago, despite killing three people, these really speak to just punishment and the need to promote respect for the law. And just because the government cites Wright, which is a Sixth Circuit case where the district court found that co-defendant disparities were justified on the basis of cooperation, but the district court heard arguments here. The case was aggressively litigated, and the district court concluded that in this case the cooperation did not justify the wide disparities. And that's important, because his finding is subject to an abuse of discretion standard. Were the co-defendants you've mentioned also sentenced by Judge Taylor? Yes, Your Honor. They were all charged together. So she had the opportunity to know what the relative culpability and what the value of the cooperation of the other individuals was. So why should Judge Lightman, in the guise of compassionate release, come in and second-guess that years later? Your Honor, I think that gets to two different issues. One, you can't say that someone is categorically precluded from receiving a sentence modification because the judge has passed away or has retired. That happens all the time. But moreover, it's relevant because Judge Taylor, at sentencing, her hands are tied. She says, this is a sentence I have to impose. She cannot consider co-defendant disparities. She doesn't consider Mr. Hunter's youth. And this goes back to my point about how the sentencing modification statute looks at what we know today. With respect to youth, for example. Even when we had mandatory guidelines, district judges always look at the relative culpability. They also look at the cooperation. And they are trying to get the various co-defendants correctly placed in the terms of who gets more time, who gets less time. And they're entitled to value the cooperation. 100%. And Judge Lightman did not disregard the government's point about cooperation. What he said is that because the co-defendants were more culpable and because Hunter was sentenced to a mandatory life sentence, when Judge Taylor couldn't consider relative culpability because, again, her hands were tied, he didn't discount it. He said it justifies some disparity. But it doesn't justify the wide disparity present in this case. Don't you think that somebody that actually pulls the trigger and commits the murder is more culpable than somebody that orders it? My time is up. May I answer your question? Please. I don't know the answer to that question. I would think so. But in this case, you have a man who ordered 10 murders. He got out of prison in 2008. He didn't commit the 10 murders. I mean, I view it that, you know, you'll have the leader of a gang and say, okay, you guys go out and do this. Well, that's something, but the person actually does it, I view as more culpable than somebody that wants somebody else to do it. But be that as may, I see your time is up. Judge Gibbons has some more questions. Thank you. Thank you. I want to start on those last couple of points. Judge Gibbons, in response to your question, these relative culpability arguments were taken into account at the original sentencing, and they were taken into account because some defendants got substantial assistance reductions and acceptance of responsibility credit, and other defendants did not. This was all part of the original sentencing package. Compassionate release is not a statute to revisit that entire package based on things known at the time of sentencing. Judge Griffin, in response to your questions, I think it's important to zoom in here. The unfairness is not that Hunter is still in. If there is any unfairness, it's that Patton is out. Oh, I know it. Timothy Patton. In a lot of states, he would be sentenced to death. I mean, to get life in prison I think is a lenient sentence in view of the offense and the offender here. Yeah. No, I totally agree with you in the fact that the other defendants did not get enough. I guess there wasn't an appeal to us or to me, but they may have not been sentenced correctly. I'm not sure not sentenced correctly is the right way. Whatever. One of the problems you have in an organized crime case, especially one involving murders, is that you can't penetrate the organization without somebody who's part of the organization testifying. And also, I mean, with murder, one problem with prosecuting murder is your main witness is dead. So just to prosecute these cases and hold anybody accountable at all, there had to be cooperating witnesses, and one of those witnesses was Timothy Patton. Now, it's not a great thing that he's released by any means, but when judges sentence defendants, whether before Booker or after Booker, they account for cooperation. That's why Timothy Patton got a lower sentence. I'm happy to answer any further questions. Otherwise, I'd ask that the district judge's decision be reversed. Thank you. We thank you both for your argument, and we'll consider the case carefully.